# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 15-1239** (Berkeley County15-F-42)

**Andrew W. Castaneira,**
**Defendant Below, Petitioner**

**FILED**

**June 9, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner, Andrew W. Castaneira, by counsel Lori M. Waller, appeals his conviction in the Circuit Court of Berkeley County of possession of material depicting a minor engaged in sexually explicit conduct that depicts violence against a child in violation of West Virginia Code § 61-8C-3(d). Respondent, the State of West Virginia, by counsel Christopher C. Quasebarth, responds in support of the circuit court order. Petitioner filed a reply, which raised additional assignments of error pursuant to Rule 10(c)(10)(b) of the West Virginia Rules of Appellate Procedure. With the Court's permission, the State filed a response that addressed petitioner's Rule 10(c)(10)(b) assignments of error.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was indicted on three counts of possessing material depicting a minor engaged in "sexually explicit conduct" and "violence against a child," in violation of West Virginia Code § 61-8C-3(a) and -3(d). Petitioner retained private counsel, Gregory V. Smith, who withdrew from the case due to "a total, complete and unfixable breakdown in [a]ttorney client communications." Thereafter, the circuit court appointed the Public Defender's Office to represent petitioner; however, it also withdrew. The circuit court then appointed attorney Andrew Arnold. Thereafter, the parties exchanged discovery and filed pre-trial motions, and the circuit court scheduled a pre-trial hearing for September 3, 2015, and trial for September 15, 2015. On September 1, 2015, Mr. Arnold moved to withdraw as counsel, citing a "complete breakdown in the [a]ttorney/[c]lient relationship."

At the September 3, 2015, pre-trial hearing, the circuit court granted Mr. Arnold's motion to withdraw and appointed attorney Matthew Yanni as petitioner's counsel. The circuit court also scheduled a hearing for September 9, 2015, to determine whether Mr. Yanni would be ready to

1

proceed to trial on September 15, 2015. Soon thereafter, Mr. Yanni moved to dismiss petitioner's indictment.

At the September 9, 2015, hearing, the State voluntarily dismissed two of the three counts of petitioner's indictment. Thereafter, the circuit court offered to continue trial to a later date; however, counsel for both parties stated that they were ready to proceed. The circuit court then asked petitioner if he wished to proceed to trial, as scheduled. Petitioner repeatedly affirmed that he did not want a continuance; however, he alleged that Mr. Yanni's assistance was not effective.

At a September 14, 2015, hearing the day before trial, petitioner asked the court to appoint new counsel; however, he repeatedly avowed that he did not want to "waive his speedy trial rights" or to represent himself at trial. The circuit court allowed petitioner to speak at some length regarding his motion for new counsel. The circuit court then denied petitioner's motion and found that petitioner refused a continuance of his trial, and that Mr. Yanni would remain as petitioner's trial counsel. The circuit court also found that all four lawyers who had represented petitioner were competent members of the West Virginia State Bar.

Petitioner's trial commenced on September 15, 2015. The State called three witnesses, all of whom were members of the West Virginia State Police's Internet Crimes Against Children Task Force. The State first called Sgt. David C. Eldridge, who was qualified as an expert in the investigation of internet child pornography and peer-to-peer file-sharing networks.[1] Sgt. Eldridge testified that he discovered a certain internet protocol ("IP") address had obtained numerous child pornography "files" via the use of peer-to-peer networks. Sgt. Eldridge also testified that the IP address associated with these files belonged to petitioner.

Cpl. W.R. Garrett testified next. Cpl. Garrett was qualified as an expert in the investigation of child pornography, general internet-based investigations, and data recovery and acquisition. Cpl. Garrett testified that he executed a search warrant on petitioner's home and retrieved various computers, hard drives, and other related materials. Cpl. Garrett testified that petitioner arrived at home during the search. Petitioner stated he was aware of his right to remain silent. Petitioner then admitted that he had downloaded child pornography onto his laptop computer using peer-to-peer networks; that he accessed the internet through a wireless connection, which was password protected; and that he was the only person who knew the password. Petitioner also claimed that, in some cultures, child pornography is "perfectly legal," but Western culture does not view it that way. Finally, petitioner admitted to Cpl. Garrett that he knew child pornography was illegal.

Cpl. Garrett then testified to the contents of a three-and-one-half minute video found on one of petitioner's hard drives. In the video, "daddy," an adult male, digitally penetrates and has

---

[1] "'[P]eer-to-peer networks . . . [permit] users' computers [to] communicate directly with each other, not through central servers.' *Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919–20, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005). . . . [T]he use of peer-to-peer file sharing programs . . . is a common and popular means by which child pornography is shared." *United States v. Blauvelt*, 638 F.3d 281, 290 (4th Cir. 2011).

intercourse with a female child who appears to between the ages of four and seven. The video also shows the child performing oral sex on "daddy" and the man ejaculating on the child's face. The child was apparently "groomed" for sexual contact because, during these events, she says, "You can do whatever you want, daddy." The State then published the video to the jury.

Following Cpl. Garrett's testimony, petitioner—in the presence of the jury—orally moved the court to discharge Mr. Yanni on the ground of "gross incompetence and ineffective assistance of counsel." The circuit court recessed the jury, took up petitioner's motion, and denied it. The court then returned the jury to the courtroom and instructed them to ignore petitioner's motion to discharge Mr. Yanni.

Thereafter, the State qualified Sgt. David E. Boober as an expert in forensic computer analysis, data recovery and acquisition, internet-based investigations, and investigations of child pornography. Sgt. Boober testified regarding his forensic search of petitioner's computers and hard drives. Sgt. Boober also testified that the hard drive containing the video described above by Cpl. Garrett also contained 249 other child pornographic video files and 497 child pornographic image files.

Petitioner did not testify and petitioner's trial counsel did not call any other witnesses.

Thereafter, the circuit court instructed the jury, over petitioner's objection, as follows:

A person is guilty of possession of child pornography depicting violence against a child when that person knowingly and willfully possesses or electronically accesses with intent to view any material visually portraying a minor engaged in any sexually explicit conduct that depicts violence to a child.

In the absence of any definition of the intended meaning of words or terms used in an instruction you may give those words their common, ordinary and accepted meaning in the connection in which they are used.

The jury may find that material "depicts violence" if said material depicts the commission of sexual assault. In West Virginia, sexual assault in the first degree is committed when a person engages in sexual intercourse or sexual intrusion with another person and in so doing inflicts serious bodily injury upon anyone; or employs a deadly weapon in the commission of the act, or a person being fourteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is younger than twelve years old and is not married to that person.

Sexual assault in the second degree is committed when a person engages in sexual intercourse or sexual intrusion with another person without the person's consent, and the lack of consent results from forcible compulsion; or such person [] engages in sexual intercourse or sexual intrusion with another person who is physically helpless.

3

Sexual intercourse means any act between persons involving penetration, however slight, of the female sex organ by the male sex organ or involving contact between the sex organs of one person and the mouth or anus of another person.

Sexual intrusion means any act between persons involving penetration, however slight, of the female sex organ or of the anus of any person by an object for the purpose of degrading or humiliating the person so penetrated or for gratifying the sexual desire of either party.

The jury found petitioner guilty of possessing material showing a minor engaged in sexually explicit conduct that depicted violence against a child, in violation of West Virginia Code § 61-8C-3(d). By order entered November 19, 2015, the circuit court sentenced petitioner to the statutory sentence of not less than five nor more than fifteen years in prison, sex offender registration for life, and ten years of supervised release. Petitioner now appeals his conviction.

On appeal, petitioner raises seven assignments of error. Petitioner first argues that the jury instruction defining "depicts violence" erroneously allowed the jury to conclude that all sexually explicit material depicts violence against a child. Petitioner avers that to "depict violence" against a child pursuant to West Virginia Code § 61-8C-3(d), the material must depict some physically violent overt act above and beyond sexual assault, such as hitting, beating, restraining, or torturing a child. Petitioner concludes that the circuit court's definition of "depicts violence" renders meaningless the aggravated penalty found in West Virginia Code § 61-8C-3(d) because, under that definition all material portraying the sexual assault of a child "depicts violence."

"[T]he question of whether a jury was properly instructed is a question of law, and the review is *de novo*." Syl. Pt. 1, in part, *State v. Hinkle*, 200 W.Va. 280, 281, 489 S.E.2d 257, 258 (1996). Further,

[a] trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not mislead by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

Syl. Pt. 4, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

West Virginia Code § 61-8C-3(a) provides that, "[a]ny person who, knowingly and willfully, sends or causes to be sent or distributes, exhibits, possesses, electronically accesses with intent to view or displays or transports any material visually portraying a minor engaged in

4

any sexually explicit conduct is guilty of a felony." West Virginia Code § 61-8C-3(d) further provides, in relevant part, that

> any person who violates the provisions of subsection (a) of this section when the conduct involves six hundred or more images or *depicts violence against a child* or a child engaging in bestiality shall, upon conviction, be imprisoned in a state correctional facility for not less than five nor more than fifteen years or fined not more than $25,000, or both.

(Emphasis added.)

The Legislature did not define "depicts violence" against a child as that term is used in West Virginia Code § 61-8C-3(d). However, we have said, "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such cases it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 5, *State v. Gen. Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959). We have also held that "[u]ndefined words and terms used in a legislative enactment will be given their common, ordinary and accepted meaning." Syl. Pt. 6, in part, *State ex rel. Cohen v. Manchin*, 175 W.Va. 525, 336 S.E.2d 171 (1984).

The common and ordinary meaning of "violence" is "the unlawful exercise of physical force or intimidation by the exhibition of such force." *New Oxford American Dictionary* 1931 (2010). The video published to the jury at petitioner's trial depicted an adult male digitally penetrating and raping a four to seven-year-old girl. It also shows the female child performing oral sex upon the adult male. These acts satisfy the definition of sexual assault in the first degree pursuant to West Virginia Code § 61-8B-3(a)(2), and sexual assault in the second degree pursuant to West Virginia Code § 61-8B-4(a). Thus, the acts depicted on the video "depict violence" because they show "the unlawful exercise of physical force." For this reason, we reject petitioner's argument that the sexual assaults depicted in the video were insufficiently violent to justify an enhanced sentence pursuant to West Virginia Code § 61-8C-3(d).

Federal courts have defined "depiction of violence" with regard to 18 United States Code § 2252, the federal act regarding the receipt or possession of child pornography. Specifically, the United States Courts of Appeals for the Seventh and Eleventh Circuits have held that materials depicting the sexual assault of a child qualify for a "depiction of violence" sentence enhancement under the United States Sentencing Commission Guidelines, U.S.S.G. 2G2.2(b)(3). *See U.S. v. Myers*, 355 F.3d 1040, 1043 (7th Cir. 2004) (video of adult male engaging in vaginal intercourse with five to eight-year-old child was "violent" for the purposes of U.S.S.G. 2G2.2(b)(3), because it would have been painful for the child); *U.S. v. Lyckman*, 235 F.3d 234, 240 (5th Cir. 2000) (holding "when the sexual act depicted is the physical penetration of a young child by an adult male, . . . [s]uch conduct is . . . sufficiently likely to cause pain and injury so as to qualify as 'sadistic' or 'violent' for purposes of the guideline [§ 2G2.2(b)(3) ]"); *U.S. v. Garrett*, 190 F.3d 1220, 1224 (11th Cir. 1999) (photographic image depicting subjection of young child to painful sexual acts, such as vaginal or anal penetration by adult males, is sadistic under § 2G2.2(b)(3)). Accordingly, in this case and on these facts, we find that the circuit court did not err in

5

instructing the jury that "material 'depicts violence' if said material depicts the commission of sexual assault."[2]

In petitioner's second assignment of error, he argues that he received ineffective assistance of trial counsel. We have oft opined,

> "'[i]t is the extremely rare case when this Court will find ineffective assistance of counsel when such a charge is raised as an assignment of error on a direct appeal. The prudent defense counsel first develops the record regarding ineffective assistance of counsel in a habeas corpus proceeding before the lower court, and may then appeal if such relief is denied. This Court may then have a fully developed record on this issue upon which to more thoroughly review an ineffective assistance of counsel claim.' Syl. Pt. 10, *State v. Triplett*, 187 W.Va. 760, 421 S.E.2d 511 (1992)." Syl. Pt. 10, *State v. Hutchinson*, 215 W.Va. 313, 599 S.E.2d 736 (2004).

Syl. Pt. 9, *State v. Woodson*, 222 W.Va. 607, 611, 671 S.E.2d 438, 442 (2008). Accordingly, we decline petitioner's request to rule on the effectiveness of his trial counsel in this direct appeal.

Petitioner's last five assignments of error, numbers three through seven, were raised in his reply to the State's responsive pleading pursuant to Rule 10(c)(10)(b) of the Rules of Appellate Procedure.[3] In his third assignment of error, petitioner challenges the validity of the

---

[2] In a similar vein, this Court has defined the phrase "an act of violence against a person" with regard to West Virginia Code § 27-6A-3(g) and -3(h) (2007), regarding the competency of a criminal defendant to stand trial. Specifically, we have held that "[an] 'act of violence against a person' within the meaning of W.Va. Code § 27–6A–3 (2007) encompasses acts that indicate the incompetent defendant poses a risk of physical harm, severe emotional harm, or severe psychological harm to children." Syl. Pt. 2, *State v. George K.*, 233 W.Va. 698, 760 S.E.2d 512, 515 (2014); *accord*, Syl. Pt. 4. *State v. Riggleman*, __W.Va.__, 798 S.E.2d 846 (2017) (discussing criminal competency of defendant and finding possession of child pornography under West Virginia Code § 61-8C-3 to be an "act of violence against a person" because it "derives from and is proximately linked to physical, emotional, and psychological harm to children"). However, we have also said that "the hearing sanctioned by West Virginia Code § 27-6A-6 is "civil in nature" and "is directed at the joint purposes of protecting the public and ensuring appropriate treatment for individuals who are both incompetent and criminally violent." *State v. Gum*, 234 W.Va. 263, 269, 764 S.E.2d 794, 800 (2014). Clearly, *George K.* and *Riggleman* construe the criminal competency statute and not the child pornography statute at issue in the instant appeal. Moreover, both cases construe the competency statute under a more lenient, civil standard of statutory construction. Nevertheless, our holdings in both cases lend credence to the correctness of the jury instruction at issue herein.

[3] Rule 10(c)(10)(b) of the Rule of Appellate Procedure provides as follows:

(continued . . . )

arch warrant that allowed the police to search his apartment. In his fourth assignment of error, petitioner challenges the validity, but not the sufficiency, of the evidence presented against him at trial. In his fifth assignment of error, petitioner asserts his speedy trial rights were "not fully protected." In his sixth assignment of error, petitioner asserts that the system for the appointment of counsel to indigent defendants is flawed and unconstitutional. Finally, in his seventh assignment of error, petitioner makes an additional claim of ineffective assistance of trial counsel.

Petitioner's third, fourth, fifth, and sixth assignments of error allege claims that were not raised before the trial court. As the Court has repeatedly cautioned, "'silence may operate as a waiver of objections to error and irregularities at the trial which, if seasonably made and presented, might have been regarded as prejudicial.' *State v. Grimmer*, 162 W.Va. 588, 595, 251 S.E.2d 780, 785 (1979), *overruled on other grounds* by *State v. Petry*, 166 W.Va. 153, 273 S.E.2d 346 (1980)." *State v. Proctor*, 227 W.Va. 352, 359, 709 S.E.2d 549, 556 (2011). Further, "'[o]ne of the most familiar procedural rubrics in the administration of justice is the rule that the failure of a litigant to assert a right in the trial court likely will result' in the imposition of a procedural bar to an appeal of that issue." *State v. LaRock*, 196 W.Va. 294, 316, 470 S.E.2d 613, 635 (1996) (citations omitted). Hence, we find petitioner has waived his third, fourth, fifth, and sixth assignments of error.

As for petitioner's seventh assignment of error that raises an additional claim of ineffective assistance of trial counsel, we refer to our response to the second assignment of error herein.

Accordingly, for the foregoing reasons, we affirm petitioner's conviction.

Affirmed.

**ISSUED:** June 9, 2017

---

In extraordinary circumstances, if counsel is ethically compelled to disassociate from the contentions presented in the brief, counsel must preface the brief with a statement that the brief is filed pursuant to Rule 10(c)(10)(b). Counsel should not inject disclaimers or argue against the client's interests. If counsel is ethically compelled to disassociate from any assignments of error that the client wishes to raise on appeal, counsel must file a motion requesting leave for the client to file a pro se supplemental brief raising those assignments of error that the client wishes to raise but that counsel does not have a good faith belief are reasonable and warranted.

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

**DISSENTING:**

Justice Robin Jean Davis