# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January Term 2014**

_____

No. 12-1270

_____

**FILED**

**January 29, 2014**

**released at 3:00 p.m.**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**STATE OF WEST VIRGINIA,**
**Plaintiff Below, Respondent**

**v.**

**KIMBERLY S.,**
**Defendant Below, Petitioner**

_____

**Appeal from the Circuit Court of Wood County**
**The Honorable Jeffrey B. Reed, Judge**
**Case No. 12-M-3**

**AFFIRMED**

_____

**Submitted January 15, 2014**
**Filed: January 29 , 2014**

**William B. Summers, Esq.**
**Parkersburg, West Virginia**
**Counsel for the Petitioner**

**Patrick Morrisey,**
**Attorney General**
**Laura Young,**
**Assistant Attorney General**
**Derek Knopp**
**Assistant Attorney General**
**Charleston, West Virginia**
**Counsel for the Respondent**

**The Opinion of the Court was delivered *PER CURIAM*.**

# SYLLABUS BY THE COURT

1. "'The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syllabus Point 1, in part, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997)." Syl. pt. 1, *State v. Watkins*, 214 W.Va. 477, 590 S.E.2d 670 (2003).

2. "The question whether an Act is civil or punitive in nature is initially one of statutory construction. A court will reject the Legislature's manifest intent only when a party challenging the Act provides the clearest proof that the statutory scheme is so punitive in either purpose or effect as to negate the Legislature's intention." Syl. pt. 4, *Hensler v. Cross*, 210 W.Va. 530, 558 S.E.2d 330 (2001).

3. "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968).

*Per Curiam*:

This case is before this Court upon the appeal of the defendant, Kimberly S.[1] from the September 26, 2012, order of the Circuit Court of Wood County. Kimberly S. was sentenced to thirty days in jail and two years of probation for the offense of contributing to the neglect of a minor - her seven year-old daughter. As reflected in the order, the circuit court also directed Kimberly S. to register with the West Virginia State Police pursuant to the *West Virginia Child Abuse and Neglect Registration Act*, *W.Va. Code*, 15-13-1 [2006], *et seq.* In addition, custody of the daughter having been placed with the father (Kimberly S.'s former husband) in a separate proceeding, the circuit court reduced Kimberly S.'s temporary visitation schedule with the child, which had been established by the Wood County Family Court.

In this appeal, Kimberly S. challenges neither the thirty day sentence nor her placement on probation. Instead, she asks this Court to reverse and set aside those portions of her sentence requiring her to register with the State Police and modifying her temporary visitation schedule. Upon review, we conclude that the circuit court was within its discretion

---

[1] We follow our past practice in domestic relations and juvenile cases which involve sensitive matters and do not utilize the last names of the parties. *The matter of: B.B.*, 224 W.Va. 647, 649 n. 1, 687 S.E.2d 746, 748 n. 1 (2009).

in requiring Kimberly S. to register under the *West Virginia Child Abuse and Neglect Registration Act*. Moreover, this Court finds that the circuit court did not commit reversible error in modifying the temporary visitation schedule established by the Family Court. Accordingly, the September 26, 2012, order of the Circuit Court of Wood County is affirmed.

## I. Factual and Procedural Background

In 2007, Kimberly S. and her husband were divorced, and Kimberly S. was designated primary custodian of their daughter. On May 9, 2011, the daughter, then age seven, arrived home at approximately 3:00 p.m. and found a note from Kimberly S. stating that she would be home soon. However, Kimberly S. did not return until around 1:00 a.m. and had been drinking.

Kimberly S. was arrested upon a charge of child neglect. Thereafter, she entered into an agreement which provided that she would enter a plea of guilty to an information filed by the prosecutor in lieu of a presentation of the case to the grand jury. Consequently, Kimberly S. entered a plea of guilty to contributing to the neglect of a minor, a misdemeanor offense set forth in *W.Va. Code*, 49-7-7 [1990], as charged in the information.[2] In June 2012, the

---

[2] *W.Va. Code*, 49-7-7 [1990], provides in part:

(a) A person who by any act or omission contributes to, encourages or tends to cause the delinquency or neglect of any child . . . shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not

circuit court accepted the guilty plea. The case was then referred to the probation department for a pre-sentence report.

In the meantime, the Family Court, upon conducting a hearing, designated the father as the daughter's custodian, and a temporary visitation schedule was established between Kimberly S. and the child. That schedule permitted visitation every Tuesday and Thursday and every other weekend. The Family Court specified that it would review the matter at a final hearing.

On September 24, 2012, the circuit court conducted a sentencing hearing in the criminal matter at which time Kimberly S.'s counsel informed the court that the issue of visitation with the daughter was pending before the Family Court. Nevertheless, in addition to the other aspects of Kimberly S.'s sentence imposed during the hearing, the circuit court reduced her visitation schedule with the child, which had been established on a temporary basis by the Family Court. The circuit court stated:

> Upon the defendant's release from jail, visitation will be as follows: One day through the week on Wednesday from the time school ends until 7:00 p.m., and for four hours on Sunday.

less than fifty nor more than five hundred dollars, or imprisoned in the county jail for a period not exceeding one year, or both fined and imprisoned.

3

On September 26, 2012, the circuit court entered an order sentencing Kimberly S. to a one year jail term for the offense of contributing to the neglect of a minor. However, the circuit court suspended the one year sentence and directed that Kimberly S. serve thirty days in jail, with a two year period of probation to follow. In addition, the circuit court reduced her temporary visitation with the child, as stated, and required her to register with the West Virginia State Police under the *West Virginia Child Abuse and Neglect Registration Act*. With regard to registration, Kimberly S. was required to provide all information required by the *Act* and "continue to do so for a period of ten (10) years."[3]

Kimberly S. appeals from the circuit court's directive requiring her to register with the State Police under the *Child Abuse and Neglect Registration Act* and the circuit court's modification of her visitation schedule.

---

[3] *W.Va. Code*, 15-13-4(a) [2006], provides, in part:

> A person required to register pursuant to the provisions of this article shall continue to comply with this section, except during ensuing periods of incarceration or confinement, until ten years have elapsed since the person was released from prison, jail or a mental health facility or ten years have elapsed since the person was placed on probation, parole or supervised or conditional release.

The ten year requirement is also found in the *West Virginia Code of State Rules* pertaining to the *Child Abuse and Neglect Registration Act*. *See W.Va. C.S.R.* § 81-16-7.1. (2010).

## II. Standard of Review

In syllabus point 1 of *State v. Watkins*, 214 W.Va. 477, 590 S.E.2d 670 (2003), this Court confirmed the following standard of review with regard to sentencing orders in criminal cases:

> "The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syllabus Point 1, in part, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997).

*Accord* syl. pt. 1, *State v. James*, 227 W.Va. 407, 710 S.E.2d 98 (2011).

In conjunction with that standard, we note, generally, that "[w]here the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R. M. v. Charlie A. L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). *Accord* syl. pt. 1, *State v. White*, 231 W.Va. 270, 744 S.E.2d 668 (2013).

## III. Discussion

### A. Registration

Kimberly S. contends that the circuit court's directive that she register under the *Child Abuse and Neglect Registration Act* should be reversed and set aside because it was not part

of her plea agreement. In addition, she asserts that the registration requirement is excessive in view of her conviction of a misdemeanor offense, contributing to the neglect of a minor.

The State, however, contends that the inclusion of the registration requirement in the September 26, 2012, order was within the circuit court's discretion. Although not a part of the plea agreement, Kimberly S. was made aware of the requirement prior to sentencing. Moreover, the State emphasizes that the registration requirement is regulatory in nature and, thus, is not to be considered an additional punishment.

The State's characterization of the requirement is correct. The intent of the *Child Abuse and Neglect Registration Act* was expressed by the West Virginia Legislature in *W.Va. Code*, 15-13-1 [2006]. Subsection (a) of the *Act* states, in part: "This article is intended to be regulatory in nature and not penal, and is intended to provide for the safety of children who are exposed to persons convicted of child abuse and neglect." *See also W.Va. C.S.R.* §§ 81-16-1.1. and -5.1. (Registration is regulatory, not penal, and the information obtained is not to be used to inflict retribution or additional punishment.).

Similar to the *Child Abuse and Neglect Registration Act* are the provisions of the *West Virginia Sex Offender Registration Act*, *W.Va. Code*, 15-12-1 [1999], *et seq.* In *Hensler v. Cross*, 210 W.Va. 530, 558 S.E.2d 330 (2001), this Court, rejecting a challenge to

registration, determined that the *Sex Offender Registration Act* is regulatory and "does not

make an action which was innocent when done, criminal and punish it as such." 210 W.Va.

at 535, 558 S.E.2d at 335. The analytical framework for challenges to registration was set

forth by this Court in *Hensler* in syllabus point four:

> The question whether an Act is civil or punitive in nature is initially one
> of statutory construction. A court will reject the Legislature's manifest intent
> only when a party challenging the Act provides the clearest proof that the
> statutory scheme is so punitive in either purpose or effect as to negate the
> Legislature's intention.

*Accord* syl. pt. 3, *Haislop v. Edgell*, 215 W.Va. 88, 593 S.E.2d 839 (2003).

In this case, the applicability of the *Child Abuse and Neglect Registration Act* and the

discretion of the circuit court in requiring registration are clear. *W.Va. Code*, 15-13-2(b)

[2006], requires registration by a person who has been convicted under any of the following

provisions: *W.Va. Code*, 61-8D-2 [1988] (murder of a child by a parent); *W.Va. Code*, 61-8D-

2a [1994] (death of a child by a parent by child abuse); *W.Va. Code*, 61-8D-3 [1996] (child

abuse resulting in injury and abuse or neglect creating a risk of injury); *W.Va. Code*, 61-8D-

3a [1999] (mutilation of a female child); *W.Va. Code*, 61-8D-4 [1996] (child neglect resulting

in injury and neglect creating a risk of injury); and *W.Va. Code*, 61-8D-4a [1997] (child

neglect resulting in death). Those offenses are felonies and do not mandate registration with

7

regard to Kimberly S.'s misdemeanor conviction under *W.Va. Code*, 49-7-7 [1990].

However, *W.Va. Code*, 15-13-2 [2006], further provides in subsection (d):

> If a person has been convicted of any criminal offense against a child in his or her household or of whom he or she has custodial responsibility, and the sentencing judge makes a written finding that there is a continued likelihood that the person will continue to have regular contact with that child or other children and that as such it is in the best interest of the child or children for that person to be monitored, then that person is subject to the reporting requirements of this article.

Subsection (d), clear in its import, is addressed in Title 18 of the *West Virginia Code of State Rules* pertaining to child abuse and neglect registration. *W.Va. C.S.R.* § 81-16-2.4. (2010), states, in part:

> "Qualifying child abuse and neglect criminal offenses" – those offenses that require registration as an offender of child abuse or neglect upon conviction or when found not guilty by reason of mental illness, mental retardation or addiction. These offenses include, but are not limited to, §§ 61-8D-2, 61-8D-2a, 61-8D-3, 61-8D-3a, 61-8D-4 or 61-8D-4a. . . . *Also included are those offenses in which a person upon [being] convicted of a criminal offense(s) against a child in his or her household or in which the person convicted has custodial responsibility, the sentencing judge makes a written finding that there is a continued likelihood that the person convicted will continue to have regular contact with that child or other children and that as such it is in the best interest of the child or children for that person to be monitored.*

(Emphasis added).[4]

The transcript of the sentencing hearing reveals a number of problems set out by the circuit court concerning Kimberly S.'s conduct warranting registration. The circuit court noted that Kimberly S.'s version of the events concerning the evening in question was contradictory, *i.e.*, that she told her daughter not to answer the door and that someone was coming to take her daughter to soccer practice. Either way, Kimberly S. never called to check on her daughter. In addition, the circuit court stated that Kimberly S.'s conduct included (1) failing to provide proof of employment, (2) not having the child with her when scheduled to do so, (3) making unauthorized visits to the child's school and (4) not being truthful about whether she had undergone mental health or substance abuse treatment. In view of those problems, the circuit court questioned whether Kimberly S. understood the significance of the criminal proceedings against her and the importance of those proceedings to her daughter.

This Court is of the opinion that the September 26, 2012, order directing Kimberly S. to register under the *Act*, in conjunction with the court's reasons stated on the record during sentencing, are sufficient to withstand Kimberly S.'s challenge. The provisions of subsection

---

[4] Language similar to the emphasized portion of *W.Va. C.S.R.* § 81-16-2.4. (2010), is found throughout the *State Rules* concerning child abuse and neglect registration. *See* §§ 81-16-2.6.; -5.1.; -6.3.; -13.1.a.; and -13.8.a.

(d) of *W.Va. Code*, 15-13-2 [2006], and *W.Va. C.S.R.* § 81-16-2.4. (2010), clearly authorize registration in circumstances beyond the specific offenses listed in those provisions. Syllabus point two of *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968), states: "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." *Accord* syl. pt. 2, *State v. Euman*, 210 W.Va. 519, 558 S.E.2d 319 (2001).

The registration requirement in the *West Virginia Child Abuse and Neglect Registration Act* is regulatory rather than punitive. Registration does not make Kimberly S.'s sentence more severe than the terms bargained for in her plea agreement. This assignment of error, therefore, is without merit.[5]

---

[5] We see equally little ground in Kimberly S.'s assertion that the circuit court's directive of registration is disproportional to her jail term and placement on probation. *See* W.Va. Const. art. III, § 5 (providing that penalties are to be proportioned to the character and degree of the offense). In addition to the fact that registration under the *Act* is regulatory in nature, syllabus point four of *Wanstreet v. Bordenkircher*, 166 W.Va. 523, 276 S.E.2d 205 (1981), observes:

> While our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence.

*Accord* syl. pt. 3, *State ex rel. Hatcher v. McBride*, 221 W.Va. 760, 656 S.E.2d 789 (2007), *cert. denied*, 552 U.S. 1269 (2008). *See generally*, George L. Blum, Annotation, *Constitutional Challenges to State Child Abuse Registries*, 36 A.L.R.6th 475 (2008).

## B. The Visitation Schedule

This Court also finds no merit in Kimberly S.'s second assignment of error concerning the circuit court's modification of her temporary visitation schedule. Kimberly S.'s visitation with her daughter, twice per week and every other weekend, was established on a temporary basis by the Family Court. The Family Court specified that it would review the issue of visitation at a final hearing. During sentencing in Kimberly S.'s criminal case, the circuit court was informed that the issue of visitation was pending before the Family Court. However, the circuit court modified and reduced Kimberly S.'s temporary visitation to one day per week and four hours on Sunday.

As justification for the change, the circuit court stated:

> West Virginia Code 62-12-9(a)(4) does allow the Court to monitor visitation under certain circumstances. This set of facts and this crime does not fall under that code section; however, it does – I don't think that it says that I cannot impose a similar term if deemed appropriate.

Chapter 62, Article 12, of the *West Virginia Code* concerns probation and parole, and *W.Va. Code*, 62-12-9(a)(4) [2001], provides:

> (a) Release on probation is conditioned upon the following:
>
> .  .  .  .

11

(4) That in every case wherein the probationer has been convicted of an offense defined in section twelve, article eight, chapter sixty-one of this code or article eight-b or eight-d of said chapter, against a child, the probationer may not live in the same residence as any minor child, nor exercise visitation with any minor child and has [*sic*] no contact with the victim of the offense: Provided, That the probationer may petition the court of the circuit wherein he or she was convicted for a modification of this term and condition of his or her probation and the burden rests upon the probationer to demonstrate that a modification is in the best interest of the child.

None of the enumerated provisions in that subsection apply in this case: *W.Va. Code*, 61-8-12 [1994] (concerns incest); *W.Va. Code*, 61-8B-1 [2007], *et seq.* (concerns sexual offenses); and *W.Va. Code*, 61-8D-1 [2005], *et seq.* (concerns the offenses addressed in section A. of this opinion which are different from *W.Va. Code*, 49-7-7 [1990], under which Kimberly S. was convicted).[6] Although citing *W.Va. Code*, 62-12-9(a)(4) [2001], in its ruling, the circuit court acknowledged that its provisions are not controlling in the circumstances pertaining to Kimberly S. and her daughter. Moreover, as stated above, the Family Court conducted a hearing prior to establishing visitation on a temporary basis, and a final hearing is to be conducted by the Family Court on the visitation issue.

Nevertheless, in modifying Kimberly S.'s temporary visitation schedule, the circuit court had before it, *inter alia*, her plea of guilty to contributing to the neglect of her daughter and the pre-sentence report completed by the probation department. In those circumstances,

---

[6] *W.Va. Code*, 62-12-9 [2001], was amended in 2013. However, the amendment is neither applicable nor relevant to the current matter.

12

two other statutes provided the circuit court with authority to determine the temporary custody of Kimberly S.'s daughter.

*W.Va. Code*, 49-7-11 [1936], provides: "Where a person is found guilty of contributing to the delinquency of a child, the court or judge may place the child in the temporary custody of the state department or of some responsible person or approved institution." More specifically, *W.Va. Code*, 49-7-12 [1936], provides:

> If the guilty person had custody of the child prior to conviction, the court or judge may, on suspending sentence, permit the child to remain in the custody of the person, and make it a condition of suspending sentence that the person provides whatever treatment and care may be required for the welfare of the child, and shall do whatever may be calculated to secure obedience to the law or to remove the cause of such delinquency.[7]

With regard to the latter statute, the circuit court suspended Kimberly S.'s one year sentence, directed that she serve a short jail term with probation to follow, and set forth a modified, temporary visitation schedule.

---

[7] While *W.Va. Code*, 49-7-11 [1936], and *W.Va. Code*, 49-7-12 [1936], refer to "delinquency," the statute under which Kimberly S. was convicted, *W.Va. Code*, 49-7-7 [1990], also refers to "delinquency," *i.e.*, a person "who by any act or omission contributes to, encourages or tends to cause the delinquency or neglect of any child[.]" *See* n. 1, *supra*.

In addition to those statutes, this Court has consistently held that a court has inherent authority to protect a child and "retains the ultimate power of disposition," with the best interests determination to be rendered by the court "exercising its independent judgment." *State ex rel. Jeanne U. v. Canady*, 210 W.Va. 88, 97, 554 S.E.2d 121, 130 (2001). Furthermore, *W.Va. Code*, 49-5-4 [1998], states that "[a] person under the age of eighteen years who appears before the circuit court in proceedings under this article shall be considered a ward of the court and protected accordingly." In *In re Samantha M.*, 205 W.Va. 383, 518 S.E.2d 387 (1999), the following observation was made:

> Our statutes are clear that whenever a child appears in court, that child is a ward of that court. That court has both a right and a responsibility to see to it that the child is protected. *See Julie G.*, 201 W.Va. at 776, 500 S.E.2d at 889 (Workman, J., dissenting) ("Furthermore, whenever a child appears in court, he is a ward of that court. W.Va. Code § 49-5-4 (1996); *Mary D. v. Watt*, 190 W.Va. 341, 438 S.E.2d 521 (1992). Courts are thus statutorily reposed with a strong obligation to oversee and protect each child who comes before them.")

205 W.Va. at 392, 518 S.E.2d at 396 (Workman, J., concurring, in part, and dissenting, in part.)

As long settled, the best interests of the child is the "polar star" by which decisions must be made which affect children. *See State ex rel. Jeanne U.*, *supra*, 210 W.Va. at 97, 554 S.E.2d at 130. *See also*, syl. pt. 7, *In the matter of Brian D.*, 194 W.Va. 623, 461 S.E.2d

14

129 (1995) ("Cases involving children must be decided not just in the context of competing sets of adults' rights, but also with a regard for the rights of the children.").

This Court's opinion in *State ex rel. Jeanne U.* makes clear: "While many of this Court's prior opinions discussing the 'polar star' involve child custody, abuse and neglect, or paternity determinations, *the concept is equally applicable to matters in which visitation with children is being adjudicated.*" (emphasis added) 210 W.Va. at 97 n. 10, 554 S.E.2d at 130 n. 10.

Based on the foregoing, this Court concludes that the circuit court in this case had inherent power to modify Kimberly S.'s visitation schedule on a temporary basis, pending a full hearing in the Family Court. The circuit court's temporary order is necessary based on the reality that the final hearing before the Family Court may not occur immediately and that the issues of custody and visitation must not languish in uncertainty.

Consequently, this Court concludes that the circuit court did not commit reversible error in modifying Kimberly S.'s temporary visitation schedule during the sentencing hearing in her criminal case. Nevertheless, this Court directs that a final resolution of the visitation issue shall be made by the Family Court on an expedited basis.

## IV. Conclusion

The circuit court did not abuse its discretion in requiring Kimberly S. to register under the *West Virginia Child Abuse and Neglect Registration Act*. Moreover, the circuit court did not commit reversible error in modifying the temporary visitation schedule established by the Family Court. The schedule determined by the circuit court shall stand, and this Court directs that a final resolution of the visitation issue shall be made by the Family Court on an expedited basis.. Accordingly, the September 26, 2012, order of the Circuit Court of Wood County is affirmed.

Affirmed.