# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2014 Term

_____

No. 13-0614

_____

FILED

September 18, 2014

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

V.

MITCHELL COLES,
Defendant Below, Petitioner

_____

Appeal from the Circuit Court of Monongalia County
Honorable Susan B. Tucker, Judge
Criminal Action Nos. 99-F-28 & 99-F-175

AFFIRMED
_____

Submitted:  September 3, 2014
Filed: September 18, 2014

W. Jesse Forbes
Forbes Law Offices, PLLC
Charleston, West Virginia
Attorney for Petitioner

Patrick Morrisey
Attorney General
Misha Tseytlin
Deputy Attorney General
Charleston, West Virginia
Attorneys for Respondent

CHIEF JUSTICE DAVIS delivered the Opinion of the Court.

JUSTICE BENJAMIN concurs and reserves the right to file a concurring opinion.

# SYLLABUS BY THE COURT

1. "In reviewing the findings of fact and conclusions of law of a circuit court concerning an order on a motion made under Rule 35 of the West Virginia Rules of Criminal Procedure, we apply a three-pronged standard of review. We review the decision on the Rule 35 motion under an abuse of discretion standard; the underlying facts are reviewed under a clearly erroneous standard; and questions of law and interpretations of statutes and rules are subject to a *de novo* review." Syllabus point 1, *State v. Head*, 198 W. Va. 298, 480 S.E.2d 507 (1996).

2. If a guilty plea is shown to have been intelligently and voluntarily entered into, generally it cannot be directly or collaterally attacked on double jeopardy grounds. One exception to this rule permits a defendant to show that the face of the record in the case establishes that a court lacked power to convict or sentence the defendant.

3. "In ascertaining legislative intent, a court should look initially at the language of the involved statutes and, if necessary, the legislative history to determine if the legislature has made a clear expression of its intention to aggregate sentences for related crimes. If no such clear legislative intent can be discerned, then the court should analyze the statutes under the test set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), to determine whether each offense requires an element of proof the

i

other does not. If there is an element of proof that is different, then the presumption is that the legislature intended to create separate offenses." Syllabus point 8, *State v. Gill*, 187 W. Va. 136, 416 S.E.2d 253 (1992).

4.      The Legislature has made clear that the fraudulent scheme offense under W. Va. Code § 61-3-24d (1995) (Repl. Vol. 2010) is a separate offense that may be prosecuted in addition to any other offense under the Code. Therefore, double jeopardy principles do not preclude a conviction and sentence for a fraudulent scheme offense in addition to a conviction and sentence for any other offense arising out of the same transaction or occurrence. The decision in *State v. Rogers*, 209 W. Va. 348, 547 S.E.2d 910 (2001), which holds to the contrary, is overruled in its entirety.

**Davis, Chief Justice:**

This criminal appeal was filed by Mitchell Coles (hereinafter "Mr. Coles") from an order of the Circuit Court of Monongalia County that denied his Motion for Correction of Sentence. Mr. Coles' motion sought to vacate one of two felony charges he pled guilty to under Case No. 99-F-28. Mr. Coles argued below and now on appeal that the two felony convictions violated double jeopardy principles. After a careful review of the briefs, the record submitted on appeal and listening to the argument of the parties, we affirm.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On January 7, 1999, a grand jury returned a five-count felony indictment against Mr. Coles in Case No. 99-F-28.[1] The indictment charged Mr. Coles with using a check kiting scheme to obtain and attempt to obtain money.[2] Specifically, Mr. Coles was charged with one count of obtaining $1,500 by false pretenses from One Valley Bank, by

---

[1]The Appendix Record filed in this case is extremely limited.

[2]Check kiting can take various forms. It is generally defined as "a scheme designed to separate the bank from its money by tricking it into inflating bank balances and honoring checks drawn against accounts with insufficient funds[.]" *United States v. Geevers*, 226 F.3d 186, 190 n.2 (3d Cir. 2000) (internal quotations and citations omitted). *See Chesler v. Dollar Bank, Fed. Sav. Bank*, 951 N.E.2d 1098, 1101 n.2 (Ohio Ct. App. 2011) ("Check kiting has been defined as the tender and deposit of checks between two accounts, artificially inflating the balance of the accounts such that it appears the accounts are significantly funded when in actuality, the funds do not exist." (internal quotations and citation omitted)).

1

tendering a check drawn on an unfunded account at United National Bank.[3]  The indictment

also charged Mr. Coles with three counts of attempting to obtain money by false pretenses

from One Valley Bank by tendering checks drawn on an unfunded account at United

National Bank.  The three attempt counts involved an aggregate sum of $8,175.  The fifth

count of the indictment charged Mr. Coles with the offense of fraudulent scheme.

While prosecution on the indictment was pending, the State filed a six-count

information against Mr. Coles on December 28, 1999, in Case No. 99-F-175.[4]  Specifically,

the first count of the information charged Mr. Coles with the felony offense of fraudulent

scheme, which involved obtaining airline tickets in the amount of $3,339, through the use

of worthless checks.  The second count charged the felony offense of fraudulent scheme that

involved obtaining items from Sears Department Store in the amount of $2,386.27, through

the use of worthless checks and credit cards.  The third count charged  the felony offense of

fraudulent scheme that involved obtaining $5,090 from One Valley Bank by making

fraudulent deposits and writing checks on closed accounts.  The remaining three counts

charged Mr. Coles with misdemeanor false pretense offenses that involved using five

---

[3]Mr. Coles had made false deposits in the account at United National Bank.

[4]An "information" is a charging instrument "filed by the prosecutor in lieu of a presentation of the case to the grand jury." *State v. Kimberly S.*, 233 W. Va. 5, ___, 754 S.E.2d 581, 583 (2014).  Under Rule 7(a) of the West Virginia Rules of Criminal Procedure, it is provided that, other than "[a]n offense which may be punished by life imprisonment . . .[,] [a]ny other felony offense may be prosecuted by information if the indictment is waived."

worthless checks to purchase items from Wal-Mart; cashing several checks from a closed account at Kroger; and obtaining furniture from Chuck's Furniture Mart.[5]

On the date that the information was filed, December 28, 1999, Mr. Coles entered into a plea agreement with the State.[6] Under the plea agreement, Mr. Coles pled guilty to two charges under the indictment: obtaining money by false pretenses and fraudulent scheme. The State agreed, among other things, to dismiss the remaining three felony charges under the indictment. Mr. Coles also agreed to plead guilty to all six counts in the information. The circuit court accepted the plea agreement and convicted Mr. Coles on the same day the agreement was obtained. On March 6, 2000, the circuit court sentenced Mr. Coles to a combined sentence of not less than three nor more than thirty years imprisonment.

In September 2000, Mr. Coles filed a motion to reduce his sentence. Mr. Coles contended in his motion that he was remorseful, that he was sufficiently punished and that he had an excellent institutional record. The circuit court denied the motion. In February 2001, Mr. Coles filed a second motion to reduce his sentence. The second motion apparently argued the same reasons for reduction that were contained in the first motion. The circuit

---

[5]The information did not disclose what device was used to obtain the furniture. Presumably it was through the use of a worthless check or credit card.

[6]Mr. Coles was represented by counsel.

court denied the second motion. In December 2006, Mr. Coles filed a third motion for reduction of sentence. The circuit court denied the motion on the grounds that it was filed beyond the 120 day time period allowed by Rule 35(b) of the West Virginia Rules of Criminal Procedure.

Mr. Coles was released on parole in April 2007, and he moved to Pennsylvania. However, as a result of a felony conviction in the State of Virginia, Mr. Coles' parole was revoked, and he was returned to prison in West Virginia in December 2010 to serve out the balance of his previous plea conviction and sentence.

In May 2011, Mr. Coles filed his fourth motion to reduce his sentence. The circuit court denied the motion as outside the time period of Rule 35(b). In November 2011, Mr. Coles filed a motion to correct his sentence under Rule 35(a) of the West Virginia Rules of Criminal Procedure.[7] In that motion, Mr. Coles contended for the first time that his two felony convictions under the indictment violated double jeopardy principles. On May 2, 2013, the circuit court entered an order denying the motion to correct sentence. Mr. Coles subsequently filed a *pro se* appeal. This Court appointed counsel to represent Mr. Coles. An amended appellate brief was filed by counsel on behalf of Mr. Coles.

---

[7]Rule 35(a) does not contain a time limitation for filing a motion.

4

## II.

## STANDARD OF REVIEW

This is an appeal from an order by the circuit court denying Mr. Coles' Rule

35(a) motion for correction of his sentence. We apply the following standard of review for

such an order:

> In reviewing the findings of fact and conclusions of law of a circuit court concerning an order on a motion made under Rule 35 of the West Virginia Rules of Criminal Procedure, we apply a three-pronged standard of review. We review the decision on the Rule 35 motion under an abuse of discretion standard; the underlying facts are reviewed under a clearly erroneous standard; and questions of law and interpretations of statutes and rules are subject to a *de novo* review.

Syl. pt. 1, *State v. Head*, 198 W. Va. 298, 480 S.E.2d 507 (1996).

## III.

## DISCUSSION

The principle argument made by Mr. Coles is that, under our decision in *State*

*v. Rogers*, 209 W. Va. 348, 547 S.E.2d 910 (2001), his conviction and sentence for false

pretense and fraudulent scheme under the indictment violate the Double Jeopardy Clause of

the state and federal constitutions.[8] The State argues that, under *United States v. Broce*, 488

U.S. 563, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989), and *State v. Proctor*, 227 W. Va. 352,

---

[8]No challenge has been made to the conviction and sentence under the information.

709 S.E.2d 549 (2011), Mr. Coles waived his double jeopardy claim. We address the arguments separately.

### A. Waiver of Double Jeopardy

The first issue we will address is the State's contention that Mr. Coles waived his double jeopardy claim. The State relies on *United States v. Broce*, 488 U.S. 563, 109 S. Ct. 757, 102 L. Ed. 2d 927, and *State v. Proctor*, 227 W. Va. 352, 709 S.E.2d 549, for the proposition that a double jeopardy claim can be waived. We will examine both cases separately.

To begin, in *Broce* a federal grand jury in Kansas returned an indictment in 1981 charging two defendants, Ray C. Broce and Broce Construction Co., Inc., with conspiracy to violate the Sherman Act. *See* 15 U.S.C. § 1.[9] In 1982, a second indictment was returned charging Mr. Broce and the corporation with conspiracy to violate the Sherman Act. The defendants eventually pled guilty to the two conspiracy charges. The federal district court sentenced Mr. Broce to concurrent two-year terms of imprisonment and fined the corporation. A year after the convictions, the defendants filed a motion in the district court to vacate the convictions under the second indictment on double jeopardy grounds. The district court denied the motion. The defendants appealed. The Tenth Circuit, in a panel

---

[9]A second count in the indictment charged Mr. Broce with mail fraud.

6

opinion and an en banc opinion, reversed and remanded the case for a factual determination of whether there was a single transaction rather than two separate conspiracies. On remand the district court vacated the conspiracy convictions under the second indictment. The government appealed, but the Tenth Circuit affirmed. The United States Supreme Court granted certiorari to consider the circumstances under which a federal defendant may attack a guilty plea conviction and sentence on double jeopardy grounds.

The decision in *Broce* made clear that, as a general rule, a claim of double jeopardy cannot be used to collaterally attack a guilty plea. *Broce* set out the governing principles for this issue as follows:

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack. There are exceptions where on the face of the record the court had no power to enter the conviction or impose the sentence.

*Broce*, 488 U.S. at 569, 109 S. Ct. at 762, 102 L. Ed. 2d 927. The opinion in *Broce* explained the "lack of power in a court" by citing to the decisions in *Blackledge v. Perry*, 417 U.S. 21, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974), and *Menna v. New York*, 423 U.S. 61, 96 S. Ct. 241, 46 L. Ed. 2d 195 (1975). *See also State v. McGilton*, 229 W. Va. 554, 559, 729 S.E.2d 876,

881 (2012) (providing an interpretation of *Blackledge* and *Menna*).  The opinion explained

that under *Blackledge* and *Menna* a defendant may attack a plea conviction on double

jeopardy grounds where, "judged on its face – the charge is one which the State may not

constitutionally prosecute." *Broce*, 488 U.S. at 575, 109 S. Ct. at 765, 102 L. Ed. 2d 927

(internal quotations and citation omitted).

The opinion in *Broce* concluded that the guilty pleas by the defendants were

counseled and voluntary.  Therefore, the convictions could not be collaterally attacked on

double jeopardy grounds.  It was further determined that the face of the record[10] failed to

show that the lower court did not have power to convict and sentence the defendants:

> Respondents . . . pleaded guilty to indictments that on
> their face described separate conspiracies.  They cannot prove
> their claim by relying on those indictments and the existing
> record.  Indeed, as noted earlier, they cannot prove their claim
> without contradicting those indictments, and that opportunity is
> foreclosed by the admissions inherent in their guilty pleas.

*Broce*, 488 U.S. at 576, 109 S. Ct. at 766, 102 L. Ed. 2d 927.  The opinion went on to reverse

the judgment of the Tenth Circuit.[11]  *See State v. Armstrong*, 904 P.2d 578 (Idaho Ct.

_____

[10]Under *Broce*, "face of the record" means evaluating a claim of lack of power in the court based upon the existing record, without the introduction of new evidence.

[11]"[B]ecause *Broce* explains the effect of guilty pleas in the federal criminal justice system, it is not binding precedent on [state] court[s]." *State v. Kelty*, 716 N.W.2d 886, 894 (Wis. 2006).  *See also Commonwealth v. Negron*, 967 N.E.2d 99, 102 (Mass. 2012) ("The rule of relinquishment articulated in *Broce* is not constitutional in nature but is a procedural bar under Federal common law, which does not govern State procedural law.").

App. 1995) (applying *Broce*); *Commonwealth v. Negron*, 967 N.E.2d 99 (Mass. 2012) (same); *State v. Anderson*, 258 P.3d 1244 (Ore. Ct. App. 2011) (same); *State v. Kelty*, 716 N.W.2d 886 (Wis. 2006) (same).

The decision in *Broce* makes clear, and we so hold, that if a guilty plea is shown to have been intelligently and voluntarily entered into,[12] generally it cannot be directly or collaterally attacked on double jeopardy grounds.[13] One exception to this rule permits a defendant to show that the face of the record in the case establishes that a court lacked power to convict or sentence the defendant. *See State v. Greene*, 196 W. Va. 500, 505, 473 S.E.2d 921, 926 (1996) (Cleckley, J., concurring) ("If any principle is well settled in this State, it is that, in the absence of special circumstances, a guilty plea waives all antecedent constitutional and statutory violations save those with jurisdictional consequences.").

Under the authority of *Broce*, Mr. Coles is limited to showing that his guilty plea was not entered into intelligently and voluntarily. Mr. Coles has not made such a showing. In fact, the limited record in this case would not permit such an analysis because Mr. Coles did not include a transcript of the hearing in which his plea was accepted by the

---

[12]We use the term "intelligently" to include advice of counsel.

[13]"A guilty plea waives a [double jeopardy] claim anytime the claim cannot be resolved on the record, regardless whether a case presents on direct appeal or collateral attack." *State v. Kelty*, 716 N.W.2d 886, 895-96 (Wis. 2006).

court. Moreover, Mr. Coles has not argued that the face of the limited record in this case shows that the circuit court did not have power to enter a conviction or impose a sentence under the indictment for the false pretense and fraudulent scheme charges. Even if such an argument were made, it would be unavailing. The face of the limited record in this case, *i.e.*, the indictment, does not reveal a lack of jurisdiction over the offenses of false pretense and fraudulent scheme.[14] Moreover, at the time the circuit court accepted Mr. Coles' guilty plea

---

[14]The false pretense and fraudulent scheme counts of the indictment were set out as follows:

> COUNT TWO: The Grand Jurors of the State of West Virginia, in and for the body of the County of Monongalia, upon their oaths, charge that STEPHEN WILLIAMS aka MITCHELL COLES, on or about the 20th day of July 1998, in Monongalia County, West Virginia, committed the offense of "Obtaining Money By False Pretenses" by unlawfully, feloniously, knowingly, and with the intent to defraud, obtaining money, by presenting check #117 in the amount of One Thousand Five Hundred Dollars ($1,500.00) to One Valley Bank, drawn on a United National Bank account, having made false deposits to the account to reflect an existing balance when no funds were available, in violation of W. Va. Code 61-3-21, as amended, against the peace and dignity of the State.

> COUNT FIVE: The Grand Jurors of the State of West Virginia, in and for the body of the County of Monongalia, upon their oaths, charge that STEPHEN WILLIAMS aka MITCHELL COLES, during July and August, 1998 in Monongalia County, West Virginia, committed the offense of "Fraudulent Scheme" by unlawfully, intentionally, willfully and feloniously depriving another person of any money, goods, property or services by means of fraudulent pretenses, representations or promises, of a total value in excess of One Thousand Dollars ($1,000.00), as

(continued...)

10

and sentenced him, no decision of this Court had been rendered which would preclude a sentence and conviction for false pretense and fraudulent scheme.[15]

Mr. Coles suggests that our decision in *State v. Greene*, 196 W. Va. 500, 473 S.E.2d 921 (1996), supports setting aside his fraudulent scheme conviction on double jeopardy grounds. We disagree. In *Greene,* the defendant's property was confiscated by the State in a forfeiture proceeding. After the forfeiture proceeding terminated, the defendant was indicted on a felony drug charge. The defendant pled guilty to a reduced drug charge. Subsequently, the defendant filed a motion for correction of sentence. The defendant argued that his sentence violated double jeopardy. The circuit court denied the motion. On appeal, the majority opinion never mentioned the decision in *Broce*. Instead, the majority opinion focused upon whether the forfeiture proceeding was civil or criminal. After determining that the forfeiture proceeding was civil, the majority opinion concluded that double jeopardy protections did not apply to civil proceedings. In the concurring opinion by Justice Cleckley, he addressed the application of *Broce*. Justice Cleckley noted that *Broce* was not applicable to the facts in *Greene* because the defendant was not challenging whether he was guilty of

[14](...continued)
part of a common scheme or plan, in violation of W. Va. Code 61-3-24d, as amended, against the peace and dignity of the State.

[15]The decision in *State v. Rogers*, 209 W.Va. 348, 547 S.E.2d 910 (2001), was rendered approximately a year after Mr. Coles' conviction and sentence.

11

the drug charge. Instead, he was challenging whether he already was punished for his conduct through the forfeiture proceeding. Neither the majority opinion, nor Justice Cleckley's observations in *Greene*, have application to Mr. Coles' conviction and sentence for false pretense and fraudulent scheme. Nothing in the record in this case shows that Mr. Coles was previously convicted and punished for conduct that formed the bases of the false pretense and fraudulent scheme charges.

The State also contends that the general contract principles discussed in *State v. Proctor*, 227 W. Va. 352, 709 S.E.2d 549 (2011), prevent Mr. Coles from attacking his guilty plea.[16] In *Proctor,* the defendant entered a plea of guilty to the crimes of sexual abuse and sexual abuse by a guardian. The defendant later filed a motion to reduce his sentence. The circuit court denied the motion. On appeal, the defendant argued "that his convictions for both first degree sexual abuse and sexual abuse by a parent, guardian or custodian are a violation of double jeopardy." *Proctor*, 227 W. Va. at 357, 709 S.E.2d at 554.[17] The Court rejected the argument for two reasons. First, it was noted in *Proctor* that this Court previously had ruled in *State v. Gill*, 187 W. Va. 136, 416 S.E.2d 253 (1992), that a conviction and sentence for both sexual abuse and sexual abuse by a guardian did not violate

_____

[16]The State relied on *Proctor* in its Summary Response to Mr. Coles' *pro se* brief.

[17]The defendant made a second argument which is not relevant.

12

the Double Jeopardy Clause. The opinion also noted that the defendant did not present any compelling reason why the Court should revisit *Gill*.

The second reason cited by *Proctor* for denying the defendant's double jeopardy claim was that the defendant "waived this assignment of error." *Proctor*, 227 W. Va. at 362, 709 S.E.2d at 559. Although the opinion cited to the decision in *Broce*, it did not rely on the waiver grounds recognized in that decision. *See Proctor*, 227 W. Va. at 363 n.18, 709 S.E.2d at 560 n.18. Instead, *Proctor* relied upon general contract principles that underlie plea agreements:

> [T]his court has explained that a plea agreement is subject to the principles of contract law insofar as its application insures that a defendant receives that to which he or she is reasonably entitled. In *State ex rel. Gardner v. West Virginia Div. of Corrections*, 210 W. Va. 783, 786, 559 S.E.2d 929, 932 (2002), this Court explained:
>
>> We have recognized that "[a]s a matter of criminal jurisprudence, a plea agreement is subject to principles of contract law insofar as its application insures a defendant receives that to which he is reasonably entitled." *State ex rel. Brewer v. Starcher*, 195 W. Va. 185, 192, 465 S.E.2d 185, 192 (1995). Such agreements require "ordinary contract principles to be supplemented with a concern that the bargaining and execution process does not violate the defendant's right to fundamental fairness[.]" *State v. Myers*, 204 W. Va. 449, 458, 513 S.E.2d 676, 685 (1998).
>>
>> Likewise, "When a defendant enters into a valid plea agreement with the State that is accepted by the trial court, an

13

enforceable 'right' inures to both the State and the defendant not to have the terms of the plea agreement breached by either party." Syllabus Point 4, *State v. Myers*, 204 W. Va. 449, 513 S.E.2d 676 (1998).

In the case at hand, the appellant was represented by counsel. He entered a plea of guilty to the offenses discussed herein and he was sentenced within permissible statutory limits. He stated that he understood the charges against him and his counsel stated that he had thoroughly explained the charges to the appellant. He voluntarily entered into the plea agreement, he does not deny his guilt, and he does not challenge the validity of his guilty plea. . . . At no point in any hearing did the appellant's counsel make a single reference to the possibility of double jeopardy for the appellant's guilty plea to both charges or to the fact that he would receive separate sentences for both crimes. In fact, the only argument during the sentencing hearing by the appellant's counsel was that the appellant be sentenced concurrently for both crimes. . . . This Court is not persuaded by the appellant's counsel's argument on this matter as the appellant waived this assignment of error by entering a guilty plea to both crimes.

*Proctor*, 227 W. Va. at 362-63, 709 S.E.2d at 559-60.

We find that *Proctor's* contract analysis is equally applicable under the facts of this case. The plea agreement submitted with the record in this case reveals that Mr. Coles and the State each made concessions in resolving the charges under the indictment. The State agreed to drop three felony counts in the indictment. Mr. Coles agreed to plead guilty to two felony counts in the indictment in exchange for the State dropping the three felony counts. More than ten years after this mutual and voluntary agreement Mr. Coles now seeks to violate that agreement by having the fraudulent scheme conviction vacated, while

14

simultaneously keeping intact that part of the plea agreement that required dismissal of the

other three felony charges. Even if we had found that Mr. Coles did not waive the double

jeopardy claim, we would not fashion such a blatantly unfair remedy against the State.

Simply put, Mr. Coles "should not be allowed to retain the benefits of the agreement while

raising double jeopardy as a bar to fulfillment of his obligations under the agreement." *State

v. Armstrong*, 904 P.2d 578, 580 (Idaho Ct. App. 1995). In the final analysis, Mr. Coles

waived his double jeopardy claim under *Broce* and *Proctor*.[18]

## B. Revisiting State v. Rogers

Mr. Coles has correctly argued that our decision in *State v. Rogers*, 209 W. Va.

348, 547 S.E.2d 910, found that double jeopardy principles precluded convicting and

sentencing a defendant for false pretense and fraudulent scheme based upon conduct arising

---

[18]The circuit court determined that double jeopardy did not apply because Mr. Coles' crimes were against numerous victims. Although we reject the grounds relied upon by the circuit court, we are free to affirm on different grounds. *See* Syl. pt. 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965) ("This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment."). *Accord State v. Payne*, 225 W. Va. 602, 611, 694 S.E.2d 935, 944 (2010) (affirming trial court ruling for grounds different than those relied upon by the lower court); *State v. Lockhart*, 208 W. Va. 622, 636 n.15, 542 S.E.2d 443, 457 n.15 (2000) ("The fact that the circuit court may have rejected Dr. Coffey's testimony for reasons different than those expressed in this opinion is of no consequence."); *State v. Boggess*, 204 W. Va. 267, 276, 512 S.E.2d 189, 198 (1998) ("Consequently, it is apparent that the trial court made the right ruling for the wrong reason. . . . Hence, even though, contrary to the trial court's reasoning, . . . the evidence still was properly excluded").

out of the same transaction or occurrence. Insofar as we have determined that Mr. Coles waived his double jeopardy argument, he cannot invoke the protections of *Rogers*. Even though Mr. Coles cannot rely on *Rogers,* we take this opportunity to revisit the legal soundness of this opinion.

Before reexamining *Rogers* we wish to be clear that we are cognizant of the impact of *stare decisis* on the decisions of this Court. "[T]he doctrine of stare decisis requires this Court to follow its prior opinions." *State Farm Mut. Auto. Ins. Co. v. Rutherford*, 229 W. Va. 73, 83, 726 S.E.2d 41, 51 (2011) (Davis, J., concurring, in part, and dissenting, in part). We have held that "[a]n appellate court should not overrule a previous decision recently rendered without evidence of changing conditions or serious judicial error in interpretation sufficient to compel deviation from the basic policy of the doctrine of stare decisis, which is to promote certainty, stability, and uniformity in the law." Syl. pt. 2, *Dailey v. Bechtel Corp.*, 157 W. Va. 1023, 207 S.E.2d 169 (1974). Moreover,

> [s]tare decisis . . . is a matter of judicial policy. . . . It is a policy which promotes certainty, stability and uniformity in the law. It should be deviated from only when urgent reason requires deviation. . . . In the rare case when it clearly is apparent that an error has been made or that the application of an outmoded rule, due to changing conditions, results in injustice, deviation from that policy is warranted.

*Woodrum v. Johnson*, 210 W. Va. 762, 766 n.8, 559 S.E.2d 908, 912 n.8 (2001) (internal quotations and citations omitted). While "this Court is loathe to overturn a decision so

16

recently rendered, it is preferable to do so where a prior decision was not a correct statement of law." *Murphy v. Eastern Am. Energy Corp.*, 224 W. Va. 95, 101, 680 S.E.2d 110, 116 (2009). As discussed below, *Rogers* misapplied basic cannons of statutory construction in its determination that (1) the Legislature did not express a clear intent on whether a defendant may be punished for both false pretense and fraudulent scheme, and (2) false pretense and fraudulent scheme contained the same elements.

The defendant in *Rogers* was convicted and sentenced for the crimes of false pretense, embezzlement, and two counts of fraudulent scheme. The defendant in *Rogers* attacked his conviction on sufficiency of the evidence and other grounds. However, as pointed out by the dissenting opinion in *Rogers*, "the majority opinion . . . utilized constitutional double jeopardy principles to analyze the issues in this case when the defendant did not invoke double jeopardy as a basis for challenging the convictions and sentences." *Rogers*, 209 W. Va. at 363, 547 S.E.2d at 925 (Davis, J., dissenting). In reexamining *Rogers'* pronouncements on false pretense and fraudulent scheme, we perform an independent analysis.[19]

---

[19]In addition to finding the convictions for false pretense and fraudulent scheme violated double jeopardy, the decision in *Rogers* also concluded that the convictions for embezzlement and fraudulent scheme violated double jeopardy.

17

The Double Jeopardy Clause of the Fifth Amendment of the federal constitution provides that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb[.]"  This clause affords three separate constitutional protections for criminal defendants:

> It protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense.

*North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076, 23 L. Ed. 2d 656 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989).  In *Conner v. Griffith*, 160 W. Va. 680, 238 S.E.2d 529 (1977), we explained that the protections provided for in the Double Jeopardy Clause in Article III, Section 5 of the state constitution were at least as coextensive as those in the Fifth Amendment.[20]  In Syllabus point 1 of *Conner*, we summarized our double jeopardy principles:

> The Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution, provides immunity from further prosecution where a court having jurisdiction has acquitted the accused.  It protects against a second prosecution for the same offense after conviction.  It also prohibits multiple punishments for the same offense.

160 W. Va. 680, 238 S.E.2d 529.

---

[20]Article III, Section 5 of the state constitution provides, in part: "No person shall . . . be twice put in jeopardy of life or liberty for the same offence."

The issue in the *Rogers* case involved the third component of the Double Jeopardy Clause, which protects against multiple punishments for the same offense. The United States Supreme Court has observed that, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S. Ct. 673, 678, 74 L. Ed. 2d 535 (1983). In other words, if the Legislature has made clear that separate punishments may be imposed under different statutes for the same criminal conduct, the Double Jeopardy Clause will not prevent such punishment. Therefore, "the first step in the double jeopardy analysis is to determine whether the legislature . . . intended that each violation be a separate offense." *Garrett v. United States*, 471 U.S. 773, 778, 105 S. Ct. 2407, 2411, 85 L. Ed. 2d 764 (1985). We have previously summarized the analysis to be used as follows:

> In ascertaining legislative intent, a court should look initially at the language of the involved statutes and, if necessary, the legislative history to determine if the legislature has made a clear expression of its intention to aggregate sentences for related crimes. If no such clear legislative intent can be discerned, then the court should analyze the statutes under the test set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), to determine whether each offense requires an element of proof the other does not. If there is an element of proof that is different, then the presumption is that the legislature intended to create separate offenses.

Syl. pt. 8, *State v. Gill*, 187 W. Va. 136, 416 S.E.2d 253 (1992).

With respect to statutory construction, we have indicated that "[t]he basic and cardinal principle, governing the interpretation and application of a statute, is that the Court should ascertain the intent of the Legislature at the time the statute was enacted, and in the light of the circumstances prevailing at the time of the enactment." Syl. pt. 1, *Pond Creek Pocahontas Co. v. Alexander*, 137 W. Va. 864, 74 S.E.2d 590 (1953). Moreover, "[w]here the meaning of a statute is clear and its provisions are unambiguous, this Court will not undertake to construe and interpret it, but will apply the statute as its exact terms require." Syl. pt. 2, *Pond Creek, id.*

The controlling statute for our analysis is the fraudulent scheme offense which is set out under W. Va. Code § 61-3-24d (1995) as follows:[21]

> (a) Any person who willfully deprives another of any money, goods, property or services by means of fraudulent pretenses, representations or promises shall be guilty of the larceny thereof.

> (b) In determining the value of the money, goods, property or services referred to in subsection (a) of this section, it shall be permissible to cumulate amounts or values where such money, goods, property or services were fraudulently obtained as part of a common scheme or plan.

> (c) A violation of law may be prosecuted under this section notwithstanding any other provision of this code.

---

[21]The statute is worded the same as it was when the *Rogers* decision was handed down. The statute has not been amended since its enactment in 1995.

The legislative intent regarding a prosecution for fraudulent scheme is clearly set out under W. Va. Code § 61-3-24d(c). This provision states without qualification that a defendant may be prosecuted under it "notwithstanding any other provision of this code." The decision in *Rogers* tersely found that this provision did not express a legislative intent to allow a separate punishment for fraudulent scheme. *Rogers* addressed the matter summarily as follows:

> While this language appears to suggest, at first blush, that the Legislature thereby intended to make violation of this statute punishable as a separate and distinct crime, we conclude otherwise based on the fact that the language at issue fails to constitute a clear and definite statement of such an intent.

*Rogers*, 209 W. Va. at 357, 547 S.E.2d at 919. This statement by *Rogers* is a mere conclusion without any accompanying analysis to explain how such a conclusion was reached. As the dissent in *Rogers* pointed out:

> Disregarding the clarity of the legislature's intent as embodied in W. Va. Code § 61-3-24d(c), the majority opinion makes the unconscionable conclusion "that the language at issue fails to constitute a clear and definite statement of such an intent." The majority's conclusion is wrong. What more could the legislature have done to express its clear intent to permit prosecution under W. Va. Code § 61-3-24d, regardless of any other offense charged?

*Rogers*, 209 W. Va. at 364, 547 S.E.2d at 926 (Davis, J., dissenting). The dissent also made the following observations:

> The false pretense offense dates back to 1849, when West Virginia was part of Virginia. The fraudulent scheme offense was created in 1995. Clearly, if nothing else, the dates of the

21

> creation of the offenses should inform the majority that the
> legislature intended to create separate punishable offenses.

*Rogers*, 209 W. Va. at 364 n.2, 547 S.E.2d at 926 n.2 (Davis, J., dissenting). Consequently,

we adopt the sound reasoning of the dissent in *Rogers*.

Insofar as it is clear to this Court that the Legislature intended to allow

punishment for a fraudulent scheme offense, in addition to any other offense, we need not

perform a *Blockburger* analysis to discern whether false pretense and fraudulent scheme each

contain a different element of prosecution.

In sum, and we so hold, the Legislature has made clear that the fraudulent

scheme offense under W. Va. Code § 61-3-24d (1995) (Repl. Vol. 2010) is a separate offense

that may be prosecuted in addition to any other offense under the Code. Therefore, double

jeopardy principles do not preclude a conviction and sentence for a fraudulent scheme

offense, in addition to a conviction and sentence for any other offense arising out of the same

transaction or occurrence. The decision in *State v. Rogers*, 209 W. Va. 348, 547 S.E.2d 910

(2001), which holds to the contrary, is overruled in its entirety.

**IV.**

**CONCLUSION**

In view of the foregoing, the circuit court's order entered on May 2, 2013, denying Mr. Coles' Motion for Correction of Sentence, is affirmed.

Affirmed.